UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTELL JONES,

    Plaintiff,

v.

HEIDI WASHINGTON, STEPHENSON, SLATER, TROLLA, LING, MARTINEZ, MILES, HARVEY, MURRAY, JOHN DOE #1, and JOHN DOE #2,

    Defendants.
_____/

Case No. 2:22-cv-10188
District Judge David M. Lawson
Magistrate Judge Kimberly G. Altman

**REPORT AND RECOMMENDATION
TO GRANT DEFENDANT'S MOTION TO DISMISS, OR
ALTERNATIVELY FOR SUMMARY JUDGMENT (ECF No. 25)
AND GRANT PLAINTIFF'S MOTION TO AMEND (ECF No. 28)**

    I.    Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Martell Jones (Jones), proceeding *pro se* and *in forma pauperis*, filed a complaint naming the above listed defendants, most of whom are employed by the Michigan Department of Corrections (MDOC). (ECF No. 1). Under 28 U.S.C. § 636(b), all pretrial matters were referred to the undersigned. (ECF No. 20).

On October 14, 2022, defendants Heidi Washington (Washington) and George Stephenson (Stephenson) moved to dismiss for failure to state a claim, and

1

alternatively for summary judgment on the basis of exhaustion. (ECF No. 25).

In response, Jones filed an amended complaint, (ECF No. 28), which the Court construed as a motion for leave to amend, (ECF No. 32). Washington and Stephenson have responded to this motion, (ECF No. 33), and Jones has replied, (ECF No. 39).

For the reasons stated below, it is RECOMMENED that Jones' motion for leave to amend the complaint be GRANTED and that the amended complaint (ECF No. 28) be considered the governing complaint. It is also RECOMMENDED that Washington and Stephenson's motion to dismiss or for summary judgment be GRANTED, and that they be DISMISSED WITH PREJUDICE from the amended complaint.

II.   Jones' Allegations

In the original complaint, Jones alleges that on July 28, 2021, while in line to receive medication, he approached defendant MDOC Officers Trolla (Trolla) and Ling (Ling) and asked to speak to a mental health official. (ECF No. 1, PageID.4-5). He informed them that he felt like he was "bugging out," experiencing hallucinations and anxiety, and Ling told him to "Fuck off! Go lock up!" (*Id.*, PageID.5). Jones says that he has been diagnosed with serious mental disabilities, including schizophrenia and antisocial personality disorder, and that he had documented symptoms including hallucinations, delusions, disorganized thoughts

2

and speech, depression, paranoia, anxiety, and suicidal ideations. (*Id*.).

After Ling's remarks, Jones continued to request to speak to a mental health official, but was rudely denied by both Ling and Trolla. (*Id*.). Trolla threatened to use his taser on Jones and told him to lock up, with Jones responding that he was "not going to be threaten[ed] for asking for mental health services." (*Id*.). Trolla then aimed his taser at Jones' face, and Jones walked away to return to his cell. At that time, Sergeant Slater (Slater) intercepted him and asked him what the problem was. (*Id*., PageID.6). Jones became confused and disoriented, at which time he was surrounded by Slater, Trolla, and Ling, as well as defendant Officers Martinez (Martinez), Miles (Miles), Harvey (Harvey), and an unknown officer John Doe (Doe), who continued to make commands to Jones that he could not understand. (*Id*.). Slater then deployed his taser, shooting Jones in the chest and causing him to become temporarily paralyzed and in extreme pain. Jones was tased two more times by another officer or officers, which caused him to be further paralyzed and remain standing before them. (*Id*.).

The defendants surrounding Jones—Slater, Trolla, Ling, Martinez, Miles, Harvey, and Doe—then slammed him into the ground and tased him further. (*Id*.). They then applied chemical agents to his face and continued to operate their tasers. (*Id*., PageID.7). Jones was also punched and kneed in the face and stomach and had his wrists and ankles bent and twisted, which Jones characterizes as either

3

unnecessary or excessive force. (*Id*.).

Jones was then taken to a "shower cage" which he remained restrained in for over two hours. (*Id*.). The taser prongs remained in his body and the chemical agents burned his face and eyes, but defendants failed to decontaminate him or turn the shower on. (*Id*.). Defendants also refused to summon anyone from health care to remove the taser prongs from his body. (*Id*., PageID.8).

Eventually, a nurse—defendant Murray (Murray)–arrived at the shower cage, but did not address Jones' state or remove the taser prongs. Jones began to convulse as a result of one or more of the abuses he had just suffered, which was observed by Murray and Slater. (*Id*.). Murray told Slater "[h]e's fine, he shouldn't have resisted. I'm not giving him no treatment." (*Id*.). Jones then requested that he be escorted to the medical examination room for treatment and removal of the taser prongs, but each defendant denied his request. (*Id*.). Jones then stated that he intended to eat the taser prongs. Doe encouraged him to do so, and Jones swallowed two of the taser prongs, resulting in him being rushed to an outside hospital. (*Id*.). He was then transferred to another hospital for treatment. (*Id*., PageID.8-9).

In the proposed amended complaint, Jones identifies the defendants by first as well as last name, and adds Allen Penk (Penk), a corrections officer, as a defendant in place of Doe. (ECF No. 28, PageID.166). Jones also adds some

4

relevant detail to the event described above. He states that the tasers, or electronic control devices (ECDs) were deployed in "dart-mode," where they propel a pair of aluminum darts tipped with stainless steel barbs that are connected to the ECD by insulated wires. (*Id.*, PageID.169). Jones also clarifies that the tasers were deployed without provocation or warning in each instance, that the defendants never attempted to otherwise restrain him, that Martinez and Harvey were the officers that sprayed him with chemical agents, and that the defendants remained aware of his conditions throughout the event and failed to act. (*Id.*, PageID.169-175).

Jones states that eventually while he was in the shower cage, Lieutenant Michael McCollough (who is not a defendant) observed his conditions, began removing taser probes from his body, and contacted health care after Jones began to ingest taser probes. (*Id.*, PageID.175-176). Jones was then treated by Cynthia McInnis, RN, (who is not a defendant), and transported to the Henry Ford Macomb Hospital. (*Id.*, PageID.176).

Jones alleges in the proposed amended complaint that Stephenson, the Warden of the Macomb Correctional Facility (MRF) where these events took place, and Washington, the Director of MDOC, were on notice and aware of MRF practices involving the unconstitutional mistreatment of mentally disabled prisoners. (*Id.*, PageID.176-178). He further alleges that Washington maintains

5

and allows the continuance of policies and customs that violate mentally disabled prisoners' rights, and is responsible for the failure to properly train correctional staff to deal with mentally disabled prisoners. (*Id*.).

Lastly, Jones has added a claim against Slater in the proposed amended complaint. He alleges that in retaliation for this lawsuit, as well as an administrative grievance filed against defendants on August 1, 2021, Slater filed a false and retaliatory criminal charge of assault against him. (*Id*., PageID.178-179).

### III. Standards of Review

#### A. Motions to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action ..."). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable

6

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented ... nor may courts construct the Plaintiff's legal arguments for him.... [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

B. Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing

7

law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Jones is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020)

(quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

IV. Analysis

A. Motion for Leave to Amend

As mentioned above, Jones has responded to Washington and Stephenson's motion to dismiss or for summary judgment with a proposed amended complaint, (ECF No. 28), which the Court has construed as a motion for leave to amend the complaint, (ECF No. 32).

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." Rule 15(a)(1) allows a party to amend its pleading once, as a matter of course, but only within 21 days of service of a responsive pleading or Rule 12(b), (e), or (f) motion. Rule 15(a)(2) allows that other amendments may be made with the court's leave, which the court should give freely when justice so requires. The Supreme Court has instructed:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010). Rule 15(a) creates a liberal policy in favor of granting leave to amend and is meant to "reinforce the principle

9

that cases should be tried on their merits rather than the technicalities of pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982); *see also Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987) (reversing the grant of a motion to dismiss because the district court failed to properly consider claims alleged in a pending motion for leave to amend).

In response, Washington and Stephenson argue that permitting Jones to amend the complaint would be futile. (ECF No. 33). "Although such motions are commonly granted, a motion to amend a complaint should nevertheless be denied if the amendment would be futile." *Courie v. Alcoa Wheel & Forged Prod.*, 577 F.3d 625, 633 (6th Cir. 2009) (cleaned up). Futility alone is a sufficient basis on which to deny a motion to amend. *Id*. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Maxwell v. Corr. Med. Servs., Inc.*, 538 F. App'x 682, 691 (6th Cir. 2013) (quotation omitted).

Although portions of the proposed amended complaint are futile, as explained below, those futile aspects are common to the original complaint as well. Specifically, the claims against Washington and Stephenson in both complaints are futile and subject to dismissal for failure to state a claim. However, the proposed amended complaint should still be adopted. The additional details provided by the proposed amended complaint, including the identity of the John Doe defendant and the added claim of retaliation against Slater, are all warranted amendments which

10

justice requires be freely given here.

As to Washington and Stephenson's dispositive motion, granting Jones' leave to amend the complaint would not render the motion moot because the "amended complaint is substantially identical to his original complaint" regarding claims against them. *Williamson v. Freytag*, No. 2:18-CV-141, 2020 WL 1975411, at *1 (W.D. Mich. Apr. 24, 2020). Thus, the Court may allow Jones' amended complaint to govern, and then consider Washington and Stephenson's arguments against it, even though they were initially made against the original complaint. Therefore, the undersigned recommends that Jones' motion to amend the complaint be GRANTED and the amended complaint (ECF No. 28) be adopted as the operative complaint.

B. Motion to Dismiss for Failure to State a Claim

Washington and Stephenson first argue that Jones has failed to state a claim against them. They note that the original complaint contains no allegations against Stephenson, the warden of the facility that houses Jones. In Jones' amended complaint, he adds allegations against Stevenson that amount to his knowledge of prisoner abuses at MRF, maintaining regulations, policies, procedures, and customs that result in these abuses, failing to act, and failing to train and supervise his subordinates. (ECF No. 28, PageID.176-177). Jones makes substantially the same allegations against Washington. (*Id.*, PageID.177-178).

11

Jones, however, does not allege that Washington or Stephenson were aware of the specific instances of abuse that Jones suffered at the hands of the other defendants. Jones' allegations show he is seeking to hold Washington and Stephenson vicariously liable for the actions of others. However, it is well-established that liability under § 1983 must be based on more than merely the right to control employees. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325-326 (1981); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694-695 (1978). To make out a claim under § 1983, Jones' "allegations must demonstrate that each defendant [ ], through his or her own individual actions, *personally violated* [his] rights." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (emphasis in original) (citing *Iqbal*, 556 U.S. at 676). "It is well-settled that [g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of respondeat superior." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (internal quotation marks omitted). Nevertheless, when the acts of individual employees represent a municipal custom or policy, the supervisor can be held liable. *Id.* at 690–692.

Here, Jones has made conclusory allegations regarding the maintaining and allowance of discriminatory "policies and customs" on the part of Washington and Stephenson. (ECF No. 28, PageID.176-178). As for the MRF or MDOC customs, Jones has made no factual allegations regarding constitutional violations other than

12

those that he suffered. He has not pled any specific custom that is maintained by Washington or Stephenson, and he has not referenced any constitutional violations on the part of the prison or MDOC beyond his own two incidents. It is not plausible to infer from Jones' mistreatment on a single occasion and an officer's retaliatory ticket for complaining about it that there is a custom of mistreatment of mentally disabled prisoners, as Jones' conclusory allegations read.

Regarding MDOC policies, Jones seems to challenge the constitutionality of certain MDOC Policy Directives, namely 02.05.100, "New Employee Training Program"; 02.05.101, "In-Service Training"; 02.05.102, "Training Committees"; 03.03.100, "Firearms, Electronic Control Devices, Specialty Impact Devices and Chemical Agents"; 04.05.110, "Use of Force"; and 04.05.112, "Managing Disruptive Prisoners." (ECF No. 28, PageID.162). However, this is Jones' only discussion of the allegedly unconstitutional policies in the amended complaint. The text of the policies is not referenced, their unconstitutionality is not spelled out, and there is no indication as to whether defendants were following, or violating, the cited policies when they took the actions described in the complaint.

Jones argues that supervisory liability may be imposed under § 1983 where a supervisory official learns of a violation and fails to remedy the wrong, or where one is grossly negligent in managing subordinates who cause the plaintiff harm. (ECF No. 39, PageID.208-209 (citing *Williams v. Smith*, 781 F.2d 319, 323-324

13

(2d Cir. 1986))). However, Jones' reliance on Second Circuit case law is misplaced. *Williams* has been distinguished by several courts in this District as it acknowledges supervisory liability under § 1983 that is not recognized in the Sixth Circuit. *See, e.g.*, *Crawford v. Washington*, No. 4:17-CV-11423, 2017 WL 8810687, at *8, n.7 (E.D. Mich. Nov. 7, 2017), *report and recommendation adopted,* No. CV 17-11423, 2018 WL 747706 (E.D. Mich. Feb. 7, 2018); *Pugh v. Holden-Selby*, No. 12-CV-12357, 2013 WL 3328537, at *3 (E.D. Mich. July 2, 2013); *Sweezer v. Scutt*, No. 11-12351, 2012 WL 4498223, at *11 (E.D. Mich. Aug. 3, 2012), *report and recommendation adopted in part,* No. 11-12351, 2012 WL 4498158 (E.D. Mich. Sept. 28, 2012).

Jones' conclusory allegations regarding the vicarious liability of Washington and Stephenson for acts they did not commit do not meet the plausibility standard of *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 555. Therefore, Jones' claims against Washington and Stephenson in the amended complaint should be dismissed.

C. Motion for Summary Judgment on Exhaustion of Administrative Remedies

1. Standard

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93

(2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve

prisoner grievances. "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007). Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Under MDOC Policy Directive 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130 ¶ S (underlining omitted).

Furthermore, MDOC Policy Directive also 03.02.130 sets forth time limits

16

regarding the three-step grievance process.

> Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, and then may file a Step I grievance about any unresolved issues with a grievance coordinator within five business days of the attempted informal resolution. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same procedure. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.

*Moses v. Campbell*, No. 20-cv-13366, 2022 WL 2805145, at *3 (E.D. Mich. July 18, 2022) (internal citations omitted). "Step III grievances are 'generally' responded to within sixty (60) days." *Johnson v. Burt*, No. 1:20-cv-802, 2021 WL 3476449, at *3 (W.D. Mich. June 14, 2021), *report and recommendation adopted*, 2021 WL 3473483 (W.D. Mich. Aug. 6, 2021) (citing MDOC PD 03.02.130 ¶ II). "The grievance process is exhausted once the final response is issued in Step III." *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

2. Discussion

Washington and Stephenson argue that Jones did not exhaust any claims against them as he did not name them at Step I of any grievance that was exhausted through Step III. They attach to their motion a Step III Grievance Report, from

17

January 1, 2015 to February 10, 2022, which reflects that Jones took one grievance through Step III of the grievance process, ARF-21-08-1697-26A (ARF-1697). (ECF No. 25-3).

Grievance ARF-1697 refers to the events of July 28, 2021 contained in Jones' complaint and names defendants Slater, Trolla, Martinez, Ling, Miles, and an unknown officer. (*Id.*, PageID.156). The grievance was denied at Step I and the denial was upheld at Step II (by Stephenson) and Step III. (*Id.*, PageID.153-156). The grievance is clearly exhausted, but it does not name Washington or Stephenson. Thus, is it not exhausted as to them. *See Reed-Bey*, 603 F.3d at 324.[1]

## V.   Conclusion

For the reasons stated above, the undersigned RECOMMENDS that Jones' motion for leave to amend the complaint be GRANTED and that the amended complaint (ECF No. 28) be considered the operative complaint. It is also RECOMMENDED that Washington and Stephenson's motion to dismiss or for summary judgment be GRANTED, and that they be DISMISSED WITH

---

[1] The exhaustion inquiry does not end there, because Jones contends that certain MDOC policies are facially unconstitutional. (ECF No. 28, PageID.162). "Under MDOC policy directive 03.02.130(F), the content of a prison policy is not subject to the grievance process." *Cary v. Washington*, No. 17-13217, 2018 WL 5117812, at *4 (E.D. Mich. July 31, 2018), *report and recommendation adopted,* 2018 WL 4501480 (E.D. Mich. Sept. 20, 2018) (internal footnote omitted). However, as explained above, Jones has not stated a proper claim that the policy directives he complains of are unconstitutional. Thus, even if he did not have to exhaust those claims, they have not been plead sufficiently to survive dismissal.

PREJUDICE from the amended complaint.

Dated: March 23, 2023  s/Kimberly G. Altman
Detroit, Michigan  KIMBERLY G. ALTMAN
United States Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 23, 2023.

            s/Carolyn Ciesla
            CAROLYN CIESLA
            Case Manager