UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTELL JONES,

       Plaintiff,
                                      Case No. 2:22-cv-10188
                                       District Judge David M. Lawson
v.                                       Magistrate Judge Kimberly G. Altman

DAVID SLATER, TRAVIS TROLLA,
TRAVIS LING, CESAR MARTINEZ,
TYRONE MILES, MICHAEL HARVEY,
RENEE MURRAY, and ALLEN PENK,

       Defendants.
_____/

**REPORT AND RECOMMENDATION
TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(ECF No. 60)**[1]

I.     Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Martell Jones (Jones), proceeding *pro se* and *in forma pauperis*, filed a complaint naming the above listed defendants, most of whom are employed by the Michigan

_____

[1] Upon review of the parties' papers, the undersigned deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

1

Department of Corrections (MDOC).[2]  (ECF No. 1).  Under 28 U.S.C. § 636(b), all pretrial matters were referred to the undersigned.  (ECF No. 20).

Before the Court is defendants' motion for summary judgment.  (ECF No. 60).  The Court initially ordered Jones to respond by December 1, 2023, but in light of two changes of address, the Court extended this date to March 15, 2024, and sent notice to Jones' most recent address at the Baraga Maximum Correctional Facility.  (ECF No. 66).  In a May 9, 2024 letter, Jones informed the Court that he had not received filings in this matter and only knew of the Court's order requiring a response to defendants' motion by requesting a copy of the docket sheet.  (ECF No. 68).  In light of this information, the Court extended his time to respond, and Jones filed a declaration and brief in response to defendants' motion.  (ECF Nos. 70, 71).  Defendants filed a timely reply.  (ECF No. 72).  The motion is therefore fully briefed and ready for consideration.

For the reasons stated below, it is RECOMMENED that defendants' motion for summary judgment, (ECF No. 60), be GRANTED.  If adopted, this would fully dispose of the case.

## II.    Jones' Allegations

In his original complaint, Jones alleges that on July 28, 2021, while in line to

---

[2] Jones also named Heidi Washington and George Stephenson as defendants; however, they were dismissed for his failure to state a claim against them.  (ECF No. 43).

2

receive medication, he approached defendant MDOC Officers Trolla (Trolla) and Ling (Ling) and asked to speak to a mental health official.  (ECF No. 1, PageID.4-5).  He informed them that he felt like he was "bugging out," experiencing hallucinations and anxiety, and Ling told him to "Fuck off! Go lock up!"  (*Id*., PageID.5).  Jones says that he has been diagnosed with serious mental disabilities, including schizophrenia and antisocial personality disorder, and that he had documented symptoms including hallucinations, delusions, disorganized thoughts and speech, depression, paranoia, anxiety, and suicidal ideations.  (*Id*.).

After Ling's remarks, Jones continued to request to speak to a mental health official, but was rudely denied by both Ling and Trolla.  (*Id*.).  Trolla threatened to use his taser on Jones and told him to lock up, with Jones responding that he was "not going to be threaten[ed] for asking for mental health services."  (*Id*.).  Trolla then aimed his taser at Jones' face, and Jones walked away to return to his cell.  At that time, Sergeant Slater (Slater) intercepted him and asked him what the problem was.  (*Id*., PageID.6).  Jones became confused and disoriented, at which time he was surrounded by Slater, Trolla, and Ling, as well as defendant Officers Martinez (Martinez), Miles (Miles), Harvey (Harvey), and an unknown officer John Doe (Doe), who continued to make commands to Jones that he could not understand. (*Id*.).  Slater then deployed his taser, shooting Jones in the chest and causing him to become temporarily paralyzed and in extreme pain.  Jones was tased two more

3

times by another officer or officers, which caused him to be further paralyzed and remain standing before them. (*Id*.).

The defendants surrounding Jones—Slater, Trolla, Ling, Martinez, Miles, Harvey, and Doe—then slammed him into the ground and tased him further. (*Id*.). They then applied chemical agents to his face and continued to operate their tasers. (*Id*., PageID.7). Jones was also punched and kneed in the face and stomach and had his wrists and ankles bent and twisted, which Jones characterizes as either unnecessary or excessive force. (*Id*.).

Jones was then taken to a "shower cage" which he remained restrained in for over two hours. (*Id*.). The taser prongs remained in his body and the chemical agents burned his face and eyes, but defendants failed to decontaminate him or turn the shower on. (*Id*.). Defendants also refused to summon anyone from health care to remove the taser prongs from his body. (*Id*., PageID.8).

Eventually, a nurse—defendant Murray (Murray)–arrived at the shower cage but did not address Jones' state or remove the taser prongs. Jones began to convulse as a result of one or more of the abuses he had just suffered and this was observed by Murray and Slater. (*Id*.). Murray told Slater "[h]e's fine, he shouldn't have resisted. I'm not giving him no treatment." (*Id*.). Jones then requested that he be escorted to the medical examination room for treatment and removal of the taser prongs, but each defendant denied his request. (*Id*.). Jones then stated that he

4

intended to eat the taser prongs.  Doe encouraged him to do so, and Jones

swallowed two of the taser prongs, resulting in him being rushed to an outside

hospital.  (*Id.*).  He was then transferred to another hospital for treatment.  (*Id.*,

PageID.8-9).

Jones moved to file an amended complaint on November 18, 2022.  (ECF

No. 28).  His motion was granted and his proposed amended complaint was

deemed properly filed.  (ECF No. 43).  In the amended complaint, Jones identifies

the defendants by first as well as last name and adds Allen Penk (Penk), a

corrections officer, as a defendant in place of Doe.  (ECF No. 28, PageID.166).

Jones also adds some relevant detail to the event described above.  He states that

the tasers, or electronic control devices (ECDs) were deployed in "dart-mode,"

where they propel a pair of aluminum darts tipped with stainless steel barbs that

are connected to the ECD by insulated wires.  (*Id.*, PageID.169).  Jones also

clarifies that the tasers were deployed without provocation or warning in each

instance, that the defendants never attempted to otherwise restrain him, that

Martinez and Harvey were the officers that sprayed him with chemical agents, and

that the defendants remained aware of his conditions throughout the event and

failed to act.  (*Id.*, PageID.169-175).

Jones states that eventually while he was in the shower cage, Lieutenant

Michael McCollough (who is not a defendant) observed his conditions, began

5

removing taser probes from his body, and contacted health care after Jones began to ingest taser probes.  (*Id*., PageID.175-176).  Jones was then treated by Cynthia McInnis, RN, (who is not a defendant), and transported to the Henry Ford Macomb Hospital.  (*Id*., PageID.176).

Jones also added a claim against Slater in the amended complaint.  He alleges that in retaliation for this lawsuit, as well as for an administrative grievance filed against defendants on August 1, 2021, Slater filed a false and retaliatory criminal charge of assault against him.  (*Id*., PageID.178-179).

### III.    Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2)

(providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Jones is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

## IV.    Discussion

In their motion, defendants address Jones' claims for excessive force, deliberate indifference, and retaliation under § 1983; his claims under the Americans with Disabilities Act and the Rehabilitation Act; and his request for injunctive relief. (ECF No. 60). They also argue that they are entitled to qualified immunity. (*Id.*). These claims will be addressed in turn.

A.    Excessive Force

1.    Standard

"[T]he Eighth Amendment . . . forbids the 'unnecessary and wanton inflicton of pain' that constitutes 'cruel and unusual punishment,' and specifically conduct that is malicious and sadistic." *Coley v. Lucas County, Ohio*, 799 F.3d 530, 537 (6th Cir. 2015) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5, 7 (1992)). But "[c]orrections officers do not violate a prisoner's Eighth Amendment rights when they apply force in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quotations omitted). "Courts must give deference to prison guards on actions they take to maintain discipline when the actions are taken after a considered choice and not in bad faith or for no legitimate purpose." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

There is both an objective and subjective component to an Eighth Amendment claim. *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). "To determine whether the subjective component is met, [the Court] consider[s] whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm." *Tuttle v. Carroll Cty. Detention Ctr.*, 500 F. App'x 480, 481 (6th Cir. 2012) (citing *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). "In assessing the objective component, [the Court] conduct[s] a contextual inquiry to determine whether the pain inflicted

8

was 'sufficiently serious.' " *Tuttle*, 500 F. App'x at 481 (citing *Williams*, 631 F.3d at 383).  "The extent of a prisoner's injury may suggest whether the use of force could plausibly have been thought necessary in a particular situation and may also provide some indication of the amount of force applied." *Tuttle*, 500 F. App'x at 481 (citing *Wilkins v. Gaddy*, 559 U.S. 34 (2010)).

Even though the Court is required to view the facts in a light most favorable to the non-moving party, when a video accurately depicts the incident, the Court should "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).  The Court must "rely mainly on undisputed video footage . . . [and] adopt the plaintiff's version of any facts not caught on film." *Ashford v. Raby*, 951 F.3d 798, 800 (6th Cir. 2020).

### 2.    Video Evidence

Defendants have submitted video footage of the incident in which Jones alleges excessive force was used.  The video runs seven minutes in total.  (ECF No. 60-2, Cover Page for video evidence submitted to the Court).

In the video, Jones appears at first to be standing calmly with his arms together in front of his waist, surrounded by four officers.  There is another officer to the side at a standing desk.  Less than a minute in, Jones takes a few steps to his right and the officers follow him to this area immediately.  Jones begins gesturing with his arms while presumably speaking to the officers (the recording does not

have audio).  At the one minute mark, Jones makes a sudden movement and appears to reach for something near his pockets.  He is then rushed by two officers who push him up against the wall, joined shortly after by a third officer.

The officers then take Jones to the ground and at 1:06 of the video, all four officers are on top of Jones, restraining him.  A fifth officer arrives to assist in restraining Jones, and they appear to struggle with him on the ground until the 3:30 mark, at which time they are able to secure him with handcuffs behind his back. Four officers remain holding him down, face down against the ground, until around 4:50 when all but two officers run off to the stairwell.  It is unclear whether a taser was used from the video, but an object which appears to be a taser is on the ground near Jones and at one point an officer appears to pick up the object device that is attached to another object by a long wire.

At that point, Jones is secured on the ground by two officers, and is allowed to roll to his back at 5:30 and stand up seconds later.  Once he is to his feet, Jones is led down a hallway and through a door by two officers and Jones is able to walk without any apparent difficulty.  From six minutes on, various officers enter and leave the open area in the video, but Jones is not seen again.

### 3.    Application

Defendants contend that they were using force to maintain order and not for the sadistic purpose of causing harm and are thus entitled to summary judgment.

(ECF No. 60, PageID.341-342).  The undersigned agrees.

As defendants note, Jones admits in the amended complaint that he refused to comply with an order to turn and be handcuffed.  (ECF No. 28, PageID.167). He also admitted that he was "given orders to cuff up" and "was refusing to follow them" at his misconduct hearing.  (ECF No. 60-4, PageID.439).  Based on the testimony and video evidence, Jones was found guilty of assault and battery of staff at that hearing.  (*Id.*, PageID.440).

Defendants describe the video as showing that "Jones continued to make aggressive movements, and even with the lack of audio in the video, appears to be challenging the officers and expresses intent to physically abuse the officers." (ECF No. 60, PageID.342).  This may be overstating what the video shows; a reasonable trier of fact may not find Jones' initial movements to be aggressive, or that he expressed intent to physically abuse anyone.  But Jones clearly disregarded an order to cuff and posed "at least some threat," permitting defendants to "respond with at least some force."  *Mosier v. Evans*, 90 F.4th 541, 548 (6th Cir. 2024) (cleaned up).

When confronted with allegations of excessive force, a court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or

11

attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396

(1989).  And when the use of some force is required to restore order, it does not

violate the Eighth Amendment unless the force used is "repugnant to the

conscience of mankind" or the force is used "maliciously and sadistically for the

very purpose of causing harm." *Whitley*, 475 U.S. at 327 (citations omitted).  The

standard is not whether any less force could have accomplished defendants'

legitimate goals.  Therefore, based on the video evidence and Jones' admission that

he refused defendants' orders, the undersigned recommends that summary

judgment be granted to defendants on Jones' excessive force claim.  In other

words, here is no genuine issue of material fact that defendants acted reasonably

and without malice in securing Jones.

### B.    Deliberate Indifference

#### 1.    Standard

Under the Eighth Amendment, prisoners have a constitutional right to

medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  Prison officials may not

act with deliberate indifference to the medical needs of their prisoners.  *Id.* at 104.

An Eighth Amendment claim has two components, one objective and the other

subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*,

273 F.3d 693, 702 (6th Cir. 2002).

Under the objective component, "the plaintiff must allege that the medical

need at issue is 'sufficiently serious.' " *Comstock*, 273 F.3d at 702-03 (quoting *Farmer*, 511 U.S. at 834).  In *Farmer*, the Court held that the objective test requires that "the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Id.* at 834; *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).  Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703.

## 2.    Application

Jones cannot satisfy either prong of the deliberate indifference test. Objectively, Jones has offered no evidence that he had a sufficiently serious medical need.  The evidence Jones offers in this case consists solely of his own sworn declaration, (ECF No. 70), and in that declaration, he does not address his allegations of deliberate indifference.

"A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment."  *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (citing *Blackmore*, 390 F.3d at 897).  Jones has made no showing that a physician mandated treatment for his injuries or that they were

so obvious that a lay person would *easily* recognize his need for medical treatment.

As defendants note, Jones continually declined medical treatment and evaluation that he was offered shortly after the incident.  A critical incident report filed on the date of the incident states that "[d]ue to Jones['] . . . extreme agitated state while in the secure shower area, [he] initially refused to be evaluated by Healthcare."  (ECF No. 60-3, PageID.366).  Per Jones' medical record submitted by defendants, Murray assessed Jones in the shower area and Jones reported having a seizure and requested a shower due to having been tased and maced.  (ECF No. 60-6, PageID.479).  Murray found that while Jones was angry, his airway was patent and he did not appear to be having trouble breathing.  (*Id.*).  Due to his demeanor, Jones was unable to be taken out of the shower cell to be assessed in a safe manner at that time.  (*Id.*).

The critical incident report reflects that Lieutenant Michael McCollough saw Jones swallow several ECD (taser) probes later in the shower area and "immediately contacted Healthcare with Nurse Cynthia McInnis reporting to the area to evaluate" Jones.  (ECF No. 60-3, PageID.366).  A clinical encounter filed by Nurse McInnis says the same.  (ECF No. 60-6, PageID.477).  According to McInnis, Jones had swallowed four taser probes, but at that time was alert and orientated, had clear speech, and refused to have his vital signs taken.  (*Id.*).  McInnis removed one taser from the middle of Jones' back, and Jones had no

14

bleeding from the taser sites.  (*Id.*).  Jones refused to have his taser sites cleaned, and McInnis informed a nurse practitioner of Jones' status.  (*Id.*).  An order was sent to the local hospital for assessment and treatment.  (*Id.*).

At the hospital, Jones declined having an endoscopic evaluation after having the risks explained to him.  (*Id.*, PageID.497).  Jones reported "very mild" abdominal pain and no other symptoms.  (*Id.*, PageID.499).  His vitals and measurements were normal.  (*Id.*).  Given that he refused endoscopic evaluation, Jones was released with medications that would assist him in passing the taser probes, per Jones' wishes.  (*Id.*, PageID.497, 500).

The medical record notes that Jones had been diagnosed with schizoaffective disorder, which may explain why he swallowed the taser probes and declined the suggested treatment from nurses and doctors.  (*Id.*, PageID.498).  The fact that Jones denied treatment does not necessarily shed light on whether his condition was serious.  However, the record does not reflect that his condition was sufficiently serious to satisfy the objective prong for deliberate indifference.  As the Sixth Circuit has explained, "verifying medical evidence of an exacerbated injury [is] necessary to establish the objective prong for 'minor maladies or non-obvious complaints of a serious need for medical care.' "  *Burgess*, 735 F.3d at 477 (6th Cir. 2013) (quoting *Blackmore*, 390 F.3d at 898).  In *Burgess*, for instance, the Sixth Circuit found that the plaintiff's claim that he "endured hours of pain" was

"insufficient to establish his claim." *Id.*

Jones also fails to establish the subjective component for deliberate indifference. Murray, the only named defendant charged with providing Jones healthcare, observed Jones before he had swallowed the probes. As noted above, she found him angry but not in apparent physical distress; his breathing and skin appeared normal. The record indicates that Murray wanted to remove Jones from the shower cell for further healthcare assessment, but that Jones' demeanor made this unsafe at that time. Jones was later observed swallowing taser probes and was treated and sent to the hospital, though he declined some recommended forms of treatment (cleaning of the taser wounds and endoscopic evaluation).

Given the only facts before the Court, there is no defendant that "subjectively perceived facts from which to infer substantial risk to the prisoner, that [] did in fact draw the inference, and that [] disregarded that risk" by failing to take reasonable measures to abate it. *Comstock*, 273 F.3d at 703. Thus, it is recommended that summary judgment be granted to defendants on Jones' deliberate indifference claim.

<p style="text-align:center">C.     First Amendment Retaliation</p>

Jones alleges that the lawsuit he filed on January 19, 2022, (ECF No. 1), a grievance he filed, and this lawsuit led to Slater filing criminal assault charges against him in retaliation. (ECF No. 28, PageID.178-179). Defendants argue that

<p style="text-align:center">16</p>

his claim fails because he cannot prove that the criminal assault charges were the result of a grievance or because he filed the original complaint in this case.

### 1.      Standard

" '[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  A First Amendment retaliation claim has three elements:

> (1) the plaintiff engaged in protected conduct;
>
> (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and
>
> (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

"[T]o prove causation it is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured." *Coleman v. Mohlman*, No. 2:19-cv-13494, 2020 WL 5648352, at *6 (E.D. Mich. Aug. 24, 2020), *report and recommendation adopted*, 2020 WL 5645715 (E.D. Mich. Sept. 22, 2020) (citing *Nieves*, 587 U.S. at 398).  "The retaliatory motive must be a 'but-for' cause to the adverse action." *Id.*

2.      Application

Jones alleges that Slater filed criminal assault charges against him in retaliation for protected acts.  (ECF No. 28, PageID.178-179).  Jones refers to the charges as "false and retaliatory," "motivated by retaliatory reasons," and "not for a legitimate correctional purpose."  (*Id.*).

As defendants note, Jones has not presented evidence that Slater had any part in initiating criminal charges against Jones.  Defendants also argue that even if Jones can show retaliatory motive and an adverse action, he has failed to demonstrate "but for" causation.  Given Jones' lack of evidence in response to defendants' motion, the Court must agree that Jones has not met his summary judgment burden to show a causal connection between Jones' protected actions and the criminal charges filed by Slater.  Further, in his deposition, Jones testified as follows:

> I don't know the exact date of when the complaint [against Jones] was filed.  I was not informed.  I was informed of the criminal charges after I filed the lawsuit.  I don't know which one came first, but I was informed of the criminal charges after I filed the lawsuit.

(ECF No. 60-5, PageID.454-455).  When asked what made him believe the charges were filed in retaliation, Jones said it was "[t]he sequence of events."  (*Id.*, PageID.455).  He also testified that he did not commit the assault.  (*Id.*).

In response to defendants' motion, Jones has submitted a signed declaration in which he states that Slater threatened to file criminal charges against him on

18

July 31, 2021, if Jones did not stop "complaining about the July 28, 2021 use of force incident to staff." (ECF No. 70, PageID.534). Jones also said that the criminal charge was later voluntarily dismissed. (*Id.*).

Sixth Circuit precedent is clear that " '[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony." *Balding-Margolis v. Cleveland Arcade*, 352 F. App'x 35, 40 (6th Cir. 2009) (quoting *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir. 1986)). "Thus, when determining whether to strike a post-deposition affidavit, the district court 'must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony.' " *Id.* (quoting *Aerel, S.R.L., v. PCC Airfoils, L.L.C.,* 448 F.3d 899, 908 (6th Cir. 2006)). "If so, then the court must strike the affidavit 'unless the party opposing summary judgment provides a persuasive justification for the contradiction.' " *Id.* (quoting *Aerel, S.R.L.*, 448 F.3d at 908).

Given the contradiction between Jones' deposition testimony, where he had little indication that the criminal charges were retaliatory, and Jones' declaration that Slater specifically threatened to file them in retaliation, the undersigned is not permitted to consider that part of Jones' declaration. *See Balding-Margolis*, 352 F. App'x 35 (upholding the district court's decision to strike portions of the plaintiff's affidavit that directly conflicted with her deposition testimony). Thus, paragraph

19

nineteen of the declaration, (ECF No. 70, PageID.534), should be considered stricken.

Jones has the burden to prove each element of his retaliation claim, including the causal connection. *See, e.g.*, *Thaddeus-X*, 175 F.3d at 399 (6th Cir. 1999). While there is no "heightened pleading standard" required to prove the "subjective motivation of the defendants," a plaintiff's burden at this stage is not trivial. *Id.* "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.' " *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1538-39 (6th Cir. 1987)) (ellipses in *Harbin-Bey*). Considering the evidence before the Court, there is nothing beyond a theory of causation with no supporting evidence to show a genuine issue of material fact linking Slater's retaliatory motive and the criminal charges he may have filed. Therefore, the undersigned recommends granting summary judgment in favor of Slater on Jones' retaliation claim.

### D.     Americans with Disabilities Act and Rehabilitation Act Claims

#### 1.     Standard

"Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be

20

subjected to discrimination by any such entity.' " *Wilson v. Gregory*, 3 F.4th 844, 859 (6th Cir. 2021) (quoting 42 U.S.C. § 12132). "Two types of claims are cognizable under Title II: claims for intentional discrimination and claims for a reasonable accommodation." *Roell v. Hamilton Cnty.*, 870 F.3d 471, 488 (6th Cir. 2017). Further, "[t]he ADA and the Rehabilitation Act in this circuit share the same substantive standard." *G.S. by & through Schwaigert v. Lee*, 558 F.Supp.3d 601, 611 (W.D. Tenn. 2021) (internal quotation marks and citations omitted). "Thus, the court reviews claims under the Rehabilitation Act as though they were brought under the ADA." *Id.*

Jones' claims sound in reasonable accommodation. To succeed on this type of claim, he must show that: "(1) he has a disability; (2) he is a 'qualified individual'; and (3) he was 'being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of' his disability." *Middlebrooks*, at *10, (quoting *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015)).

## 2.    Application

Defendants argue that while Jones has been diagnosed with one or more mental disorders, he has not shown that his diagnoses meet the definition of a disability for purposes of the ADA or Rehabilitation Act.

The ADA defines a disability as a physical or mental impairment that substantially limits one or more of the major life activities of the

21

individual. According to the ADA regulations, an individual is "substantially limited" in performing a major life activity if he is either: (1) unable to perform a major life activity that the average person in the general population can perform (*e.g.*, walking), or (2) significantly restricted as to the condition, manner, or duration under which she can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity (*e.g.*, being able to walk only for brief periods of time). 29 C.F.R. § 1630.2(j)(1)(i)-(ii).

*Middlebrooks*, at *10.

Defendants note a medical record entry from March 2020, stating that Jones' medical needs "can be met at any institution" and that his mental health needs require an outpatient mental health team. (ECF No. 60-6, PageID.481). This, they say, "is not reflective of Jones being substantially limited in a major life activity." (ECF No. 60, PageID.350 (citing *Cotter v. Ajilon Servs*., 287 F.3d 593, 598 (6th Cir. 2002)). Jones has not offered any evidence to rebut this point. Thus, he has not shown a triable fact that he has a disability for the purposes of the ADA or Rehabilitation Act.

Even assuming Jones has a covered disability, his claims would still fail because he was not denied the benefits of healthcare while in prison "by reason of" his disability. 42 U.S.C. § 12132. As explained above, the evidentiary record reflects that the force used to detain him was reasonable and that he was offered treatment for his ailments. The fact that he was at times either too disorderly to be treated or declined the treatment he was offered does not equate to discrimination

22

based on his disability.  Therefore, defendants should be granted summary

judgment on Jones' ADA and Rehabilitation Act claims.

<div align="center">E.    Qualified Immunity</div>

<div align="center">1.    Standard</div>

Qualified immunity shields government officials performing discretionary

functions "from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Created to

protect government officials from interference with their official duties, qualified

immunity "is an immunity from suit rather than a mere defense to liability."

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It gives officials "breathing room to

make reasonable but mistaken judgments and protects all but the plainly

incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3,

6 (2013) (punctuation modified).  After a defending official initially raises

qualified immunity, the plaintiff bears the burden of showing that the official is not

entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d at 472.

The Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the

facts in the light most favorable to the plaintiff, [it] determine[s] whether the

allegations give rise to a constitutional violation; and (2) [it] assess[es] whether the

right was clearly established at the time of the incident." *Id.*  The steps may be

<div align="center">23</div>

considered in either order, so "[i]f the court concludes that no constitutional violation has occurred, there is no need to address whether the alleged right was clearly established." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

### 2.    Application

Defendants do not thoroughly argue that Jones' constitutional rights were not clearly established.  Rather, defendants argue that they are entitled to qualified immunity because no constitutional violation has occurred.  The undersigned agrees for the reasons described above.  Because there is no constitutional violation, it need not be established that Jones' alleged rights were or were not clearly established.  Therefore, defendants are also entitled to summary judgment on the grounds of qualified immunity.

### V.    Conclusion

It is clear that Jones was met with some force from defendants.  However, the record, particularly the video evidence, simply does not support Jones' version of the events.  And as explained above, not all instances of force rise to the level of a constitutional violation.  Accordingly, for the reasons stated above, it is RECOMMENED that defendants' motion for summary judgment, (ECF No. 60), be GRANTED.  If adopted, this would fully dispose of the case.

Dated: July 31, 2024                         s/Kimberly G. Altman____
Detroit, Michigan                            KIMBERLY G. ALTMAN
                                             United States Magistrate Judge

## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the court determines that any objections are without

merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 31, 2024.

<div style="margin-left:40%">

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager

</div>