UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTEL JONES,

                    Plaintiff,                   Case Number 22-10188

v.                                        Honorable David M. Lawson
                                            Magistrate Judge Kimberly G. Altman
DAVID SLATER, TRAVIS TROLLA,
TRAVIS LING, CESAR MARTINEZ,
TYRONE MILES, MICHAEL HARVEY,
RENEE MURRAY, and ALLEN PENK,

                    Defendants.

_____/

## ORDER ADOPTING REPORT AND RECOMMENDATIONS, OVERRULING PLAINTIFF'S OBJECTIONS, AND DISMISSING COMPLAINT WITH PREJUDICE

Plaintiff Martel Jones, a Michigan prisoner, filed a complaint without the assistance of an attorney against prison guards and a nurse employed by the Michigan Department of Corrections (MDOC) alleging that they violated his rights under the Constitution and the Americans with Disabilities Act (ADA) during an incident that occurred on July 28, 2021 at the Macomb Correctional Facility in Lenox, Michigan. Jones alleges that some of the defendants violated the Eighth Amendment by using excessive force while subduing him after a disturbance, they were deliberately indifferent to his medical needs by failing to treat him properly after the incident, they violated the ADA by not providing a reasonable accommodation for his mental health disability, and defendant Slater violated the First Amendment by filing an assault charge in retaliation for the grievance Jones filed over the incident. The case was referred to Magistrate Judge Kimberly G. Altman to conduct all pretrial proceedings. Thereafter, the defendants filed a motion for summary judgment. Magistrate Judge Altman filed a report on July 31, 2024 recommending that the motion be granted. The plaintiff filed timely objections to the report and recommendation, and the motion is before the Court for fresh review.

I.

Jones presently is incarcerated by the MDOC at the Baraga Correctional Facility in Baraga, Michigan.  According to the complaint, on July 28, 2021, while the plaintiff was standing in line to receive medication at the Macomb Correctional Facility, he approached one of the defendant officers and asked to speak to a mental health treater, indicating that he felt like he was "bugging out" and experiencing hallucinations and anxiety.  Another officer, defendant Ling, who was nearby, allegedly told the plaintiff to "Fuck off!" and "Go lock up!"

Jones says that he has been diagnosed with serious mental disabilities, including schizophrenia and antisocial personality disorder, and that he has experienced medically documented symptoms including hallucinations, delusions, disorganized thoughts and speech, depression, paranoia, anxiety, and suicidal ideations.

After hearing the dismissive remarks by the officer, Jones continued to request to speak to a mental health official but was rudely denied by both officers.  One officer then threatened to use his taser weapon on Jones and told him to "lock up," with Jones responding that he was "not going to be threaten[ed] for asking for mental health services."  The officer then aimed his taser at Jones' face, and Jones walked away to return to his cell.  At that point, a third officer intercepted Jones and asked him what the problem was.

Jones became confused and disoriented, and by this time he was surrounded by a gathering of six officers.  Defendant Slater then allegedly deployed his taser, shooting Jones in the chest and causing him to become temporarily paralyzed and suffer extreme pain.  Jones then was tased two more times, which caused him to be paralyzed and unable to move from a frozen standing position. The defendants then tackled Jones, slammed him into the ground, and tased him several more times.  During the scuffle, the officers sprayed a chemical agent in Jones's face and punched and

kneed him in the face and stomach, while also contorting his hands and wrists.  Jones alleges that he was shocked with the taser weapons multiple times in both "dart mode" and "drive stun mode." He alleged that the tasers were deployed without provocation or warning, and that the defendants never attempted to restrain him otherwise.

After he was subdued, Jones was taken to a "shower cage" where he remained restrained for over two hours.  The taser prongs remained in his body and the lingering chemical agent burned his face and eyes, but the defendants failed to decontaminate him or turn the shower on.  The defendants also refused to summon anyone from health care to remove the taser prongs from his body.  Eventually, a jail nurse (defendant Murray) arrived at the shower cage, but she did not address Jones' condition or remove the taser prongs.  Jones began to convulse as a result of one or more of the abuses he had suffered, and this was observed by defendants Murray and Slater. However, Murray told Slater "[h]e's fine, he shouldn't have resisted. I'm not giving him no treatment [sic]."  Jones then requested that he be escorted to the medical examination room for treatment and removal of the taser prongs, but the defendants denied his request.  Jones then stated that he intended to eat the taser prongs.  One of the defendants encouraged him to do so, and Jones swallowed two of the taser prongs, resulting in him being rushed to an outside hospital.  He was then transferred to another hospital for treatment.

The defendants present a different version of the events, some of which is supported by video footage of part of the incident.  The seven-minute video (not containing audio), summarized by the magistrate judge, ECF No. 73, PageID.578-79, shows Jones acting calmly until he started gesturing with his arms and making sudden movements toward his pockets.  He then was rushed by two officers who put him against a wall, joined by a third, and then a fourth who took him to the ground.  A fifth officer joined and eventually secured the struggling Jones with handcuffs

- 3 -

behind his back.  It is not clear when the taser was used, but there is evidence of a taser and guide wires in the images.

In addition, Jones filed an amended complaint that included his own narrative of how the incident occurred:

> When plaintiff continued to request to speak to a mental health official, defendant L[i]ng stated, "Shut your fucking mouth! Stop your bitching and deal with it!" Defendant Trolla stated, "You shouldn't have came [sic] to prison!"  Plaintiff stated, "I need help!"  Defendant Trolla responded, "Keep running your fucking mouth and I'm gonna tase you in it!  You have two seconds to lock-up!"  Plaintiff responded, "I'm not going to be threatened for asking for mental health services." Defendant Trolla withdrew [sic] his ECD (Taser) and aimed it at plaintiff's face. Plaintiff attempted to de-escalate the situation and walked away to return to his cell. Defendant Trolla followed behind plaintiff yelling, "Turn around and cuff-up!," while aiming his ECD at plaintiff's back.

Am. Compl. ECF No. 28, PageID.168-69.

Jones filed and pursued a grievance against the officers involved in the incident and the nurse who refused to treat him, followed by the present lawsuit.  He later was charged with misconduct for assaulting an officer, and he was found guilty by an administrative law judge for disobeying an order to "cuff up" and resisting officers.

In his amended complaint, Jones alleges that defendants Slater, Trolla, Ling, Martinez, Miles, and Harvey used excessive force against him during the incident, defendant nurse Murray was deliberately indifferent to his medical needs, defendant Slater retaliated against him in violation of the First Amendment by filing charges after Jones had filed grievances and his initial complaint in this case, and that all the defendants refused reasonably to accommodate his mental health needs and denied him access to programs in violation of the ADA.  The defendants moved for summary judgment and Jones responded.

Magistrate Judge Altman filed a report suggesting that the undisputed evidence, including the video record, the summary of the misconduct proceeding, the medical records, and Jones's

own submissions, demonstrated that no material fact questions remain, and the defendants are entitled to a judgment on all the claims in their favor as a matter of law.  She found that the defendants did not inflict cruel and unusual punishment because they had no punitive or sadistic purpose when they used reasonable force to subdue Jones and maintain order in the prison after Jones refused to comply with an order.  She also determined that Jones did not satisfy either the objective or the subjective components of his deliberate indifference claims because Jones was taken to a hospital for appropriate medical treatment of a minor wound, some of which he refused. She suggested that the evidence did not show that defendant Slater retaliated against Jones because there was no evidence that he played any part in initiating the misconduct charges against Jones, and Jones failed to produce evidence showing a causal connection between the charges and his protected First Amendment conduct.  And she held that Jones's diagnosis of his mental health condition did not meet the definition of a disability under the ADA, nor did he show that he was denied healthcare benefits while in prison by reason of his disability.  Judge Altman recommended that the motion for summary judgment be granted and the case be dismissed.

Jones timely filed twelve numbered objections to the report and recommendation.

## II.

When a party files timely objections to a report and recommendation, the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  This fresh review requires the Court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part.  28 U.S.C. § 636(b)(1).  This review is not plenary, however.  "The

filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the Court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985).  As a result, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

## A.

The plaintiff's objections numbered 1 through 6 address the standard for adjudicating motions for summary judgment under federal Rule of Civil Procedure 56.  It is well established that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party bringing the summary judgment motion must inform the court of the basis for its motion and identify portions of the record that demonstrate that no material facts are genuinely in dispute. *Id.* at 558. (citing *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845,

848 (6th Cir. 2002)).  "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

Jones complains that the magistrate judge did not apply the rule properly or consider the materials he submitted.  However, none of his first six objections is supported by any developed argument, specific factual details, or citations of legal authority.  Instead, those objections merely allude to general legal principles and assert, without elaboration, such things as the plaintiff's contention that the magistrate judge did not construe the evidence in his favor, or failed properly to apply the pertinent rules of decision.  It is well settled that "a general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed," because "[t]he objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious," and "objections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings that [the objector] believe[s] [are] in error" are insufficient.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).  The plaintiff's objections numbered 1 through 6 are not sufficiently specific to constitute substantive objections to the recommendation for dismissal.

Objections one through six will be overruled.

## B.

Objections numbered seven through 12 are directed to the substance of the cruel and unusual excessive force claim.  The plaintiff argues that the video footage submitted by the defendants was unauthenticated, and the magistrate judge erred by concluding from the footage that it was "unclear" whether a taser device was used.  But the video shows that an object

resembling a taser weapon is visible in the footage, and the report of the disciplinary hearing also indicates that it was determined that a taser was in fact used during the takedown.  Jones says that a disciplinary hearing report submitted by the defendants also was unauthenticated because it was not signed by the hearing officer and a certification that the report was a document prepared and kept in the usual course of business was not notarized.  He also says that the defendants falsely represented in affidavits that the plaintiff had an opportunity to review the video footage, but to date he never has seen the footage, and the plaintiff therefore was not afforded an adequate opportunity to present factual rebuttal to the defendants' assertions about what the video footage shows.

The magistrate judge correctly outlined the applicable rules of decision for an Eighth Amendment claim for infliction of cruel and unusual punishment via the use of excessive force against a prisoner.  "To state a claim for excessive force [via the Eighth Amendment], a prisoner must allege facts from which it can be inferred that the prison official applied force 'maliciously and sadistically to inflict pain.'"  *Westley v. Harris*, No. 23-3177, 2024 WL 4111143, at *5 (6th Cir. Sept. 4, 2024) (quoting *Johnson v. Sootsman*, 79 F.4th 608, 616 (6th Cir. 2023)).  "[T]he Eighth Amendment . . . forbids the 'unnecessary and wanton infliction of pain' that constitutes 'cruel and unusual punishment,' and specifically conduct that is malicious and sadistic."  *Coley v. Lucas County*, 799 F.3d 530, 537 (6th Cir. 2015) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5, 7 (1992)).  However, "[c]orrections officers do not violate a prisoner's Eighth Amendment rights when they apply force in a good-faith effort to maintain or restore discipline."  *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quotations omitted).  "Courts must give deference to prison guards on actions they take to maintain discipline when the actions are taken after a considered choice and not in bad faith or for no legitimate purpose."  *Whitley v. Albers*, 475 U.S. 312, 319

(1986).  There is both an objective and subjective component to an Eighth Amendment claim. *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010).  "To determine whether the subjective component is met, [the Court] consider[s] whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm." *Tuttle v. Carroll Cty. Detention Ctr.*, 500 F. App'x 480, 481 (6th Cir. 2012) (citing *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)).  "In assessing the objective component, [the Court] conduct[s] a contextual inquiry to determine whether the pain inflicted was 'sufficiently serious.'" *Tuttle*, 500 F. App'x at 481 (citing *Williams*, 631 F.3d at 383).  "The extent of a prisoner's injury may suggest whether the use of force could plausibly have been thought necessary in a particular situation and may also provide some indication of the amount of force applied."  *Tuttle*, 500 F. App'x at 481 (citing *Wilkins v. Gaddy*, 559 U.S. 34 (2010)).  When the use of some force is required to restore order, it does not violate the Eighth Amendment unless the force used is "repugnant to the conscience of mankind" or the force is used "maliciously and sadistically for the very purpose of causing harm."  *Whitley*, 475 U.S. at 327 (citations omitted).

Even though the Court is required to view the facts in a light most favorable to the non-moving party, when a video accurately depicts the incident, the Court should "view[] the facts in the light depicted by the videotape."  *Scott v. Harris*, 550 U.S. 372, 381 (2007).  The Court must "rely mainly on undisputed video footage . . . [and] adopt the plaintiff's version of any facts not caught on film."  *Ashford v. Raby*, 951 F.3d 798, 800 (6th Cir. 2020).

The plaintiff here takes issue with the magistrate judge's narrative of the events captured by the video record, contending that she mistakenly found it "unclear" whether a taser was used, despite the report of a disciplinary hearing concluding that a taser was used several times during the takedown.  The plaintiff also insists that both the video and the disciplinary hearing report were

not properly submitted into the record because they were insufficiently authenticated, and because the plaintiff did not have an opportunity to review the video.

The plaintiff, however, does not address the magistrate judge's core conclusion that the use of force objectively was justified because the plaintiff admitted that he defied orders to "cuff up" and return to his cell.  Contrary to the plaintiff's argument, the magistrate judge's analysis shows that she fully credited all of the plaintiff's factual allegations, and her narrative summary of the video demonstrates that she accepted as true the plaintiff's assertions that he was not physically aggressive toward the officers, and that they nevertheless physically tackled him and used taser shocks, chemical agents, and knee and fist strikes in an effort to subdue him.  The Court's review of the video exhibit confirms that the magistrate judge's narrative accurately summarizes the sequence of the altercation so far as it may be gleaned from that recording.

Notwithstanding all of the above, the magistrate judge found it dispositive that the plaintiff had admitted in his amended complaint, and according to the disciplinary record he also admitted during a disciplinary hearing, that he refused to obey the defendants' orders to turn around and submit to being handcuffed.  The magistrate judge's analysis concerning the plaintiff's admission cited the plaintiff's own narrative of the incident in the amended complaint, quoted earlier.  *See* Am. Compl. ECF No. 28, PageID.168-69.  The magistrate judge found that the plaintiff's own narrative of the incident established as an undisputed fact that he disregarded an order to submit to handcuffing and therefore posed "at least some threat," permitting the defendants to "respond with at least some force." *Mosier v. Evans*, 90 F.4th 541, 548 (6th Cir. 2024).  That conclusion was well founded in the factual account stated by the plaintiff in his amended complaint.  The plaintiff's objections challenging the admissibility of other evidence in the record such as the video and disciplinary hearing report do not undermine the conclusion that, by his own account, the

takedown by the officers and ensuing use of various forcible means to subdue the plaintiff was instigated by the plaintiff's refusal to comply with the officers' commands.

The plaintiff admitted that, when told to turn around and submit to being handcuffed, he failed to comply, turned around, and walked away, stating that he "refused to be threatened" for requesting medical attention.  The Sixth Circuit has held clearly that "[c]orrections officers do not violate a prisoner's Eighth Amendment rights when they apply force 'in a good-faith effort to maintain or restore discipline.'" *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014).  Based on the plaintiff's own account, that is what occurred in this case.  Furthermore, the court of appeals also has "found no Eighth Amendment violation where a prisoner was sprayed with pepper spray after repeatedly disobeying orders to exit [a] shower." *Ibid.*  Moreover, "in numerous other cases [the Sixth Circuit has] likewise concluded that 'the use of . . . chemical agents against recalcitrant prisoners' did not violate the Eighth Amendment." *Ibid.* (citing *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992) (collecting cases)).  "Similarly, [the court of appeals] repeatedly [has] described the use of a taser [] as a proportional level of force in response to a prisoner's refusal to follow orders, including an order to accompany an officer." *Johnson v. Sootsman*, 79 F.4th 608, 620 (6th Cir. 2023) (collecting cases).  When the pleaded claims are considered against the backdrop of that controlling case law, it is clear that the plaintiff has not posed any viable cause of action for "wanton and malicious" infliction of physical punishment, where he admits that the use of the taser, pepper spray, and physical takedown maneuvers was prompted by his refusal to obey the defendants' orders to halt, turn around, and present his hands to be cuffed.

Objections seven through 12 will be overruled.

C.

The magistrate judge concluded that the plaintiff had failed to put forth evidence demonstrating the existence of any genuine issue of material fact on his deliberate indifference claims based on medical treatment, and that he had not presented sufficient evidence to sustain either the First Amendment retaliation claim or disability discrimination claim.  The plaintiff has not presented any specific objection or developed argument challenging the magistrate judge's conclusions that the claims for retaliation, deliberate indifference, and disability discrimination must be dismissed.

III.

The magistrate concluded correctly that the evidence failed to support an excessive force claim or a deliberate indifference claim under the Eighth Amendment.  The plaintiff failed to offer evidence that created a fact question sufficient to sustain the remaining claims in his amended complaint.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation (ECF No. 73) is **ADOPTED**, and the plaintiff's objections (ECF No. 74) are **OVERRULED**.

It is further **ORDERED** that the defendants' motion for summary judgment (ECF No. 60) is **GRANTED**.

It is further **ORDERED** that the case is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 30, 2024